Date Signed:
May 2, 2016



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MIGUEL ALFONSO RAMIREZ and VALERIE SHAFFER DE RAMIREZ,<br><br>Debtors. | Case No. 14-00239<br><br>Chapter 7<br><br>Re: Dkt. No. 201 |

### MEMORANDUM DECISION ON MOTION TO AVOID LIEN; EXHIBIT A

Chapter 7 debtors Miguel and Valerie Ramirez seek to avoid a judgment lien against their residence. The judgment was entered in favor of Finance Factors, Limited and later assigned to creditor Understood LLC ("Understood"). The Debtors contend that the lien of the judgment impairs an exemption and is avoidable under Bankruptcy Code § 522(f).

Following an evidentiary hearing, I hold that the Debtor's interest in the subject property is worth $612,700.00 and the judgment lien is subject to avoidance in part.

I.  Background

The Debtors own the leasehold interest in property located at 41-879 Mahailua Street, Waimanalo, Hawaii 96795 (the "Property"). The Property consists of about fourteen acres and is improved with a single family dwelling and various farm structures. The Debtors use the Property as their principal residence and as a working farm.

The Debtors' lessor is the State of Hawaii, Department of Land and Natural Resources ("DLNR"). The lease expires on March 11, 2030.[1] The lease rent is currently $9,140.00 per year, but the lease provides that the rent is subject to adjustment on June 22, 2015 (the rent adjustment process as of that date has apparently not been completed), and again on June 22, 2025. The adjusted rent is to be the then-current fair market rental of the Property.

II.  Legal Standard

Section 522(f)(1) of the Bankruptcy Code allows a chapter 7 debtor to avoid the "fixing" of certain "judicial liens" (including judgment liens[2]) "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under section 522(b)."[3] Section 522(f)(2)

---

[1] Dkt. # 238 at 2-3; Dkt. # 242 at 4.

[2] 11 U.S.C. § 101(36).

[3] 11 U.S.C. § 522(f)(1).

defines impairment of an exemption:

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> > (i) the lien,
> >
> > (ii) all other liens on the property; and
> >
> > (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.[4]

## III. Discussion

To apply section 522(f), one must determine (1) whether the lien is of the kind that can be avoided under that section, (2) the amount of all other liens on the subject property, (3) the amount of the exemption to which the debtor would be entitled absent the questioned lien, and (4) the value of the debtor's interest in the subject property in the absence of any liens.

### A. Type of Lien

There is no dispute that Understood's judgment lien is a judicial lien potentially subject to avoidance under section 522(f).

---

[4] 11 U.S.C. § 522(f)(2)(A).

U.S. Bankruptcy Court - Hawaii    #14-00239    Dkt # 267    Filed  05/02/16    Page 3 of 14

## B. Amount of Liens

The claimed[5] liens on the Debtors' interest in the Property are as follows:

| Lienholder | Amount of Lien |
|---|---|
| Select Portfolio Servicing, Inc. | $300,087.00 |
| Hawaii Dept. of Agriculture ("DAG") | $136,004.92 |
| IRS Lien 1 | $69,806.88 |
| Understood | $212,375.24 |
| IRS Lien 2 | $21,773.78 |

The Debtors claim that the DLNR also holds a lien in the amount of $155,380.00 for future rents due under the lease. The lease provides that:

> The Lessor shall have a lien on all the buildings and improvements placed on the premises by the Lessee, on all property kept or used on the premises, whether the same is exempt from execution or not and on the rents of all improvements and buildings located on the premises for all Lessor's costs, attorney's fees, rent reserved, for all taxes and assessments paid by the Lessor on behalf of the Lessee, and for the payment of all money provided in the lease to be paid by the Lessee, and this lien shall continue until the amounts due are paid.

For several reasons, I disagree with the Debtors' contention.

First, the lease does not purport to grant a lien on the Debtors' leasehold interest in the land; rather, the lien attaches only to buildings, improvements, and other property located or used on the Property, and to the rents of the buildings

---

[5] Understood correctly points out that the Debtors failed to offer any evidence about the liens at the evidentiary hearing. The information in the table comes from the filed proofs of claim and other filed documents, of which the court can take judicial notice.

4

and improvements.

Second, the Debtors' argument that *all* of the future rent under the lease should be treated as a lien assumes that the Debtors will never pay a penny of rent to the lessor for the entire remaining term of the lease and that the lessor will nevertheless take no action to terminate the lease until it expires about fourteen years hence. These assumptions are far from realistic.

Third, even if the rent lien should be considered, the stream of rental payments should be reduced to present value. Simply adding up the nominal amount of the rent ignores the fact that many of those payments will not be made until years from now.

Fourth, the lessor's claim for rent is already accounted for in the valuation of the leasehold interest. A leasehold is worth less than a fee simple interest because (among other reasons) the lessee must pay rent to the lessor and a fee simple owner pays no such rent. Deducting the rent expense from the fee simple value to calculate the leasehold value, and then deducting the rent expense again as a lien against the leasehold interest in the property, amounts to double-counting the rent.

**C.    Exemption**

The Debtors claim a $30,000.00 exemption in their interest in the Property. The time to object to the claim of exemptions has expired,[6] so the exemption

---

[6] Dkt. # 10 at 3.

5

claim is incontestible.[7]

### D. Value of Debtors' Interest in Property

The parties have offered conflicting evidence about the value of the Debtors' interest in the Property.

The Debtors point out that the City and County of Honolulu assessed the value of the Property for real property tax purposes as $505,800.00 in 2012 and $516,900.00 in 2015.[8] I give the tax assessed valuations relatively little weight compared to the detailed and individualized evidence provided by the expert appraisal witnesses.

Understood argues that the Debtors have admitted that their interest in the Property is worth $810,000.00. They signed a reaffirmation agreement with DAG in 2014 which recites that DAG's collateral was worth $810,000.00.[9] I give this evidence little weight for two reasons. First, DAG's collateral includes items that Understood's judgment lien does not encumber, such as accounts receivable, inventory, and equipment, and the reaffirmation agreement does not separately state a value for the real property interest to which Understood's judgment lien attaches. Second, the Ramirezes' lay opinion of the value of their assets is less

---

[7] *Law v. Siegel*, 134 S.Ct. 1188, 1195-96 (2014).

[8] Dkt. # 208 at 2.

[9] Dkt. # 205 at 3.

6

U.S. Bankruptcy Court - Hawaii   #14-00239   Dkt # 267   Filed 05/02/16   Page 6 of 14

persuasive than the expert opinion testimony. (Mr. Ramirez testified that DAG prepared the reaffirmation agreement and that he signed it without reading it carefully. I reject this contention; one who chooses to sign an agreement is bound by it, whether or not he read it.)

The Debtors offered the expert report and testimony of Ray L. Benedicktus Jr. Mr. Benedicktus opined that the market value of the leasehold interest in the Property was $464,000.00 as of the Debtors' bankruptcy filing date. Mr. Benedicktus employed the sales comparison approach; he attempted to find sales of comparable properties, and adjusted the sale prices to estimate the market value of the Debtors' leasehold. The sales comparison approach is recognized and usually persuasive, but I find that Mr. Benedicktus' opinion in this case suffers from two flaws. First, the land areas of the properties he selected as comparables are much smaller than the Property, but Mr. Benedicktus made no adjustment on that score. (He did make adjustments for differences in the size of the dwellings on the subject and comparable properties.) This suggests that Mr. Benedicktus' valuation is too low.  Second, and more important, he did not determine whether the terms of the leases for the comparable sales were similar to the terms of the Debtors' lease. Mr. Benedicktus' appraisal does not account for the fact that the provisions of a lease, including the remaining term, the lease rent, and rent adjustment terms, have a significant bearing on the value of a leasehold. Because the record does not

7

U.S. Bankruptcy Court - Hawaii    #14-00239    Dkt # 267    Filed 05/02/16    Page 7 of 14

disclose the lease terms for the comparable sales, it is not possible to determine whether this omission makes Mr. Benedicktus' valuation too high or too low.

Understood offered the expert report and testimony of Hugh M. Howell. Mr. Howell opined that the Debtors' interest in the Property was $828,000.00. Mr. Howell did not employ the sales comparison approach. Instead, he separately valued three components that, in his view, comprised the value of the property: (1) "bonus rents;" (2) net income from the farm operation on the Property; and (3) the depreciated value of the improvements on the Property.

In Mr. Howell's report, "bonus rent" means the difference between the market rental value of the Property and the contractual rent. At Understood's direction, Mr. Howell assumed that the current contract rent and fair market rent are both $31,480.00 per year. This is the amount of rent that DLNR proposed as its opening bid in the rent adjustment process for the period running from June 23, 2015 to June 22, 2025.[10] Mr. Howell warns that the value of the leasehold would change if this assumption were incorrect. Mr. Howell's own report indicates that the assumption is not correct; in Table 2 of his report,[11] he opines that the current fair market rent for the Property is $15,700.00 per year, roughly half of the amount that his client instructed him to assume.

---

[10] Dkt. # 238 at 3-5.

[11] Dkt. # 238-2 at 14-15.

U.S. Bankruptcy Court - Hawaii  #14-00239  Dkt # 267  Filed 05/02/16  Page 8 of 14

At first blush, the assumption that Understood instructed Mr. Howell to make appears to benefit the Debtors; everything else being equal, a higher lease rent indicates a lower leasehold value.[12] But further analysis reveals that the assumption inflates the estimated value of the Debtors' leasehold. According to Mr. Howell's method, the value of the leasehold depends on the difference between market rent and contract rent. Mr. Howell projects that market rents will increase at a fixed percentage per year. Using the (higher) assumed market rent at the beginning of the time period means that the dollar amount of the "bonus rent" is greater than if one used the (lower) actual market rent at the beginning of the period. Thus, following Mr. Howell's analysis, the assumption which Understood required Mr. Howell to make unrealistically increases the calculated value of the leasehold.

I also disagree with Mr. Howell's prediction of the rate at which market rents will increase. Mr. Howell opined that market rents will increase 6% in the first year after the valuation and 4% annually in the remaining years 2-17 of the lease.[13] Given that the prevailing rates of return on all investments are extremely low and unlikely to increase anytime soon, I find that market rents will increase 6% for the

---

[12] Suppose one had the opportunity to buy a leasehold interest in two identical properties, and that the provisions of the leases are identical except the lease rent for the first property is lower than the second property. Logically, one would pay more for the cheaper lease than the costlier lease.

[13] Dkt. # 238 at 13-14; Dkt. # 238-2 at 13.

9
U.S. Bankruptcy Court - Hawaii   #14-00239   Dkt # 267   Filed 05/02/16   Page 9 of 14

first year but 2% annually for years 2-17.

The second component of value under Mr. Howell's approach is the present value of the net income from farm operations during the lease term. I disagree with two aspects of Mr. Howell's analysis of this component.

First, Mr. Howell began with the average net income actually realized by the Debtors during 2011 and 2013.[14] He did not consider years before 2011 or after 2013 because he had no data; this was reasonable. But he disregarded the actual net income for 2012 because it was significantly lower than 2011 and 2013, and he assumed that this was an anomaly. I see no basis for this assumption. It is appropriate to use the average net farm income for years 2011, 2012, and 2013,[15] which is $30,400.00 (after rounding).

Second, Mr. Howell assumed that net farm income would increase at 6% in the first year and 4% in the remaining lease years.[16] I do not find it reasonable that a small farm operation such as this one could regularly increase its net income at that rate. Considering the extreme variability in the three years for which income data is available, I find it reasonable to assume that the average annual net income will remain steady for the duration of the lease.

---

[14] Dkt. # 238 at 14-15; Dkt. # 238-2 at 13.

[15] Dkt. # 238-2 at 36.

[16] Dkt. # 238-2 at 13.

The third value component is the depreciated value of the improvements on the property. Mr. Howell applied a 50% depreciation rate to the improvements, even though about 73% of the lease term has elapsed and the lease does not permit the lessee to remove the improvements at the end of the lease. Mr. Howell based his estimate on his opinion that the lessee could probably obtain an extension of the lease and thus could continue to enjoy the improvements for a longer period.[17] But there is no evidence that DLNR is likely to give the Debtors an extension, especially in light of their financial difficulties, and no evidence that the useful economic life of the improvements extends beyond the lease term. Therefore, I find that the 73% depreciation figure is correct.

Table 1 attached to this decision summarizes my value finding. Table 1 is identical to Table 1 included in Mr. Howell's appraisal report, except that: (1) the market and contract rents as of January 20, 2015, are $15,700.00 per year; (2) market rents are projected to increase at 6% for the first year and 2% annually thereafter; (3) net farm operating income is set at $30,400.00 per year for the remainder of the lease; and (4) the depreciated value of the improvements is set at $243,000.00 (after rounding). Therefore, I find that the total value of the Debtor's interest in the Property is $612,700.00 (after rounding).[18]

---

[17] Dkt. # 238 at 19-20; Dkt. # 238-2 at 40.

[18] This may overstate the true value of the leasehold for two reasons. First, the attachment of Understood's judgment lien is a default under the lease. Dkt. # 243 at 10 ¶ 11. Second, the

11

### E. Extent of Lien Avoidance

The next step is to calculate the extent to which the lien impairs the exemption, under section 522(f)(2)(A). To do so, one must add the questioned lien, all other liens, and the amount of the exemption, and subtract the value of the property.[19]

Using the Property value of $612,700.00, the formula is applied as follows:

| | |
|---|---:|
| Understood's Lien | $212,375.24 |
| Select Portfolio Servicing, Inc. | + $300,087.00 |
| DAG | + $136,004.92 |
| IRS Lien 1 | + $69,806.88 |
| IRS Lien 2 | + $21,773.78 |
| | = $740,047.82 |
| Debtor's Exemption | + $30,000.00 |
| | = $770,047.82 |
| | |
| Property value | $612,700.00 |
| Less amount of total liens and exemption | -$770,047.82 |
| **Impairment** | **= - $157,347.82** |

---

lease provides that the lessee can't sell the lease without DLNR's consent and, as a condition to its consent to an assignment of the lease, DLNR can require the lessee to pay DLNR a portion of the purchase price. *Id.* at 11 ¶ 13. The risk of termination of the lease, and the possibility that the lessee could not realize its full value upon sale, probably diminishes the value of the leasehold. There is no evidence in the record that would support a finding concerning the amount of the diminution.

[19] 11 U.S.C. § 522.

12

| | |
|---|---|
| Understood's Lien | $212,375.24 |
| Less Impairment (amount of Understood's Lien that can be avoided) | -$157,347.82 |
| **Understood's Remaining Lien Amount** | **= $55,027.42** |

## IV.  Conclusion

Because the Debtors satisfied the requirements of section 522(f)(1) and (2)(A), the Motion to Avoid Judicial Lien is GRANTED and Understood's lien is avoided such that the remaining amount of the lien is $55,027.42.

## END OF ORDER

# TABLE 1

| Year | From | To | Months | Semi-Annual K Rent | Semi-Annual Market rent | Rent Differential In Favor of Lessee | Semi-Annual Farm Income | Overall Income In Favor of the Lessee | Discount Rate Factor | Discounted Differential | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2/20/2014 | 8/19/2014 | 6 | 4570 | 7850.00 | 3280.00 | 30400.00 | 33680.00 | 0.928477 | 31271.09 | 0.5 | 0.16 | 0.928477 |
|   | 8/20/2014 | 2/19/2015 | 6 | 4570 | 8085.50 | 3515.50 | 30400.00 | 33915.50 | 0.862069 | 29237.50 | 1 | 0.16 | 0.862069 |
| 2 | 2/20/2015 | 8/19/2015 | 6 | 7850 | 7850.00 | 0.00 | 30400.00 | 30400.00 | 0.800411 | 24332.49 | 1.5 | 0.16 | 0.800411 |
|   | 8/20/2015 | 2/19/2016 | 6 | 7850 | 7928.50 | 78.50 | 30400.00 | 30478.50 | 0.743163 | 22650.49 | 2 | 0.16 | 0.743163 |
| 3 | 2/20/2016 | 8/19/2016 | 6 | 7850 | 8007.79 | 157.79 | 30400.00 | 30557.79 | 0.690009 | 21085.16 | 2.5 | 0.16 | 0.690009 |
|   | 8/20/2016 | 2/19/2017 | 6 | 7850 | 8087.86 | 237.86 | 30400.00 | 30637.86 | 0.640658 | 19628.38 | 3 | 0.16 | 0.640658 |
| 4 | 2/20/2017 | 8/19/2017 | 6 | 7850 | 8168.74 | 318.74 | 30400.00 | 30718.74 | 0.594836 | 18272.60 | 3.5 | 0.16 | 0.594836 |
|   | 8/20/2017 | 2/19/2018 | 6 | 7850 | 8250.43 | 400.43 | 30400.00 | 30800.43 | 0.552291 | 17010.80 | 4 | 0.16 | 0.552291 |
| 5 | 2/20/2018 | 8/19/2018 | 6 | 7850 | 8332.93 | 482.93 | 30400.00 | 30882.93 | 0.512789 | 15836.44 | 4.5 | 0.16 | 0.512789 |
|   | 8/20/2018 | 2/19/2019 | 6 | 7850 | 8416.26 | 566.26 | 30400.00 | 30966.26 | 0.476113 | 14743.44 | 5 | 0.16 | 0.476113 |
| 6 | 2/20/2019 | 8/19/2019 | 6 | 7850 | 8500.43 | 650.43 | 30400.00 | 31050.43 | 0.442060 | 13726.15 | 5.5 | 0.16 | 0.442060 |
|   | 8/20/2019 | 2/19/2020 | 6 | 7850 | 8585.43 | 735.43 | 30400.00 | 31135.43 | 0.410442 | 12779.30 | 6 | 0.16 | 0.410442 |
| 7 | 2/20/2020 | 8/19/2020 | 6 | 7850 | 8671.28 | 821.28 | 30400.00 | 31221.28 | 0.381086 | 11898.00 | 6.5 | 0.16 | 0.381086 |
|   | 8/20/2020 | 2/19/2021 | 6 | 7850 | 8758.00 | 908.00 | 30400.00 | 31308.00 | 0.353830 | 11077.69 | 7 | 0.16 | 0.353830 |
| 8 | 2/20/2021 | 8/19/2021 | 6 | 7850 | 8845.58 | 995.58 | 30400.00 | 31395.58 | 0.328522 | 10314.15 | 7.5 | 0.16 | 0.328522 |
|   | 8/20/2021 | 2/19/2022 | 6 | 7850 | 8934.03 | 1084.03 | 30400.00 | 31484.03 | 0.305025 | 9603.43 | 8 | 0.16 | 0.305025 |
| 9 | 2/20/2022 | 8/19/2022 | 6 | 7850 | 9023.37 | 1173.37 | 30400.00 | 31573.37 | 0.283209 | 8941.86 | 8.5 | 0.16 | 0.283209 |
|   | 8/20/2022 | 2/19/2023 | 6 | 7850 | 9113.61 | 1263.61 | 30400.00 | 31663.61 | 0.262953 | 8326.04 | 9 | 0.16 | 0.262953 |
| 10 | 2/20/2023 | 8/19/2023 | 6 | 7850 | 9204.74 | 1354.74 | 30400.00 | 31754.74 | 0.244146 | 7752.78 | 9.5 | 0.16 | 0.244146 |
|   | 8/20/2023 | 2/19/2024 | 6 | 7850 | 9296.79 | 1446.79 | 30400.00 | 31846.79 | 0.226684 | 7219.15 | 10 | 0.16 | 0.226684 |
| 11 | 2/20/2024 | 8/19/2024 | 6 | 7850 | 9389.76 | 1539.76 | 30400.00 | 31939.76 | 0.210470 | 6722.37 | 10.5 | 0.16 | 0.210470 |
|   | 8/20/2024 | 2/19/2025 | 6 | 7850 | 9483.66 | 1633.66 | 30400.00 | 32033.66 | 0.195417 | 6259.92 | 11 | 0.16 | 0.195417 |
| 12 | 2/20/2025 | 8/19/2025 | 6 | 11665 | 9578.49 | -2086.51 | 30400.00 | 28313.49 | 0.181440 | 5137.20 | 11.5 | 0.16 | 0.181440 |
|   | 8/20/2025 | 2/19/2026 | 6 | 11665 | 9674.28 | -1990.72 | 30400.00 | 28409.28 | 0.168463 | 4785.91 | 12 | 0.16 | 0.168463 |
| 13 | 2/20/2026 | 8/19/2026 | 6 | 11665 | 9771.02 | -1893.98 | 30400.00 | 28506.02 | 0.156414 | 4458.74 | 12.5 | 0.16 | 0.156414 |
|   | 8/20/2026 | 2/19/2027 | 6 | 11665 | 9868.73 | -1796.27 | 30400.00 | 28603.73 | 0.145227 | 4154.02 | 13 | 0.16 | 0.145227 |
| 14 | 2/20/2027 | 8/19/2027 | 6 | 11665 | 9967.42 | -1697.58 | 30400.00 | 28702.42 | 0.134840 | 3870.22 | 13.5 | 0.16 | 0.134840 |
|   | 8/20/2027 | 2/19/2028 | 6 | 11665 | 10067.09 | -1597.91 | 30400.00 | 28802.09 | 0.125195 | 3605.89 | 14 | 0.16 | 0.125195 |
| 15 | 2/20/2028 | 8/19/2028 | 6 | 11665 | 10167.76 | -1497.24 | 30400.00 | 28902.76 | 0.116241 | 3359.68 | 14.5 | 0.16 | 0.116241 |
|   | 8/20/2028 | 2/19/2029 | 6 | 11665 | 10269.44 | -1395.56 | 30400.00 | 29004.44 | 0.107927 | 3130.36 | 15 | 0.16 | 0.107927 |
| 16 | 2/20/2029 | 8/19/2029 | 6 | 11665 | 10372.13 | -1292.87 | 30400.00 | 29107.13 | 0.100208 | 2916.76 | 15.5 | 0.16 | 0.100208 |
|   | 8/20/2029 | 2/19/2030 | 6 | 11665 | 10475.86 | -1189.14 | 30400.00 | 29210.86 | 0.093041 | 2717.79 | 16 | 0.16 | 0.093041 |
| 17 | 2/20/2030 | 3/11/2030 | 0.6129 | 11665 | 10580.61 | -1084.39 | 30400.00 | 29315.61 | 0.093041 | 2727.54 | 16 | 0.16 | 0.093041 |
|   |   |   |   |   | **TOTAL** | 5122.51 | 1003200.00 | 1008322.51 |   | 369553.36 |   |   |   |

Replacement Cost New- All Improvements from Table 5 of Howell Decl. [1]  $900,554

Accrued Depreciation at 73%:  $657,404
Total  $243,150

NOTE: [1] Table 5 of the Howell Decl. valued the replacement cost of the new shade structure at $326,700.00. Because the shades are in deteriorating condition, I valued them at $0.00.

Add present value of overall income in favor of the lessee  369553.36

Final concluded subject leasehold interest value  **$612,703**

**Rounded $612,700.00**

EXHIBIT A